IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JERAMIE DOUCET,<br>TDCJ-CID No. 02361545, | §<br>§<br>§ | |
| Plaintiff, | §<br>§ | |
| v. | §<br>§ | 2:24-CV-037-Z-BR |
| FRANCISCO J. BACA-SALGADO,<br>*et al.,* | §<br>§<br>§<br>§ | |
| Defendants. | §<br>§ | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION TO**
**GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court is a Motion for Summary Judgment (the "Motion") filed by Defendants Francisco J. Baca-Salgado ("Baca-Salgado") and Gary W. Gardner ("Gardner"). (ECF 21). For the reasons stated herein, the Magistrate Judge recommends that the Motion be GRANTED.

**I. FACTUAL BACKGROUND**

During the relevant time period, Plaintiff Jeramie Doucet ("Doucet") was an inmate at the Jordan Unit of the TDCJ. His Complaint alleges that, on December 16, 2022, he was sitting at a table in the chow hall when Baca-Salgado attacked him from behind. (ECF 3 at 4, ECF 11 at 1). Specifically, he alleges that Baca-Salgado put him in a chokehold and sprayed mace directly into his face. (*Id.*) Doucet expressly denies that he either threatened Baca-Salgado or made any aggressive move towards Baca-Salgado prior to the alleged assault. (*Id.* at 4). Doucet also alleges that Gardner was standing roughly 15-20 feet away when Baca-Salgado attacked him and that Gardner witnessed the alleged assault but failed to intervene. *Id.* at 2.

Doucet's Complaint alleges that both Baca-Salgado and Gardner drafted fabricated witness statements accusing Doucet of attempted assault on Baca-Salgado before the use of force occurred.

1

(*Id*. at 1-2, 6). Doucet further alleges that Baca-Salgado gave false testimony at Doucet's subsequent disciplinary hearing on the incident. (*Id*. at 6). Gardner's allegedly false witness statement also was entered as evidence at the disciplinary hearing. (*Id*.).

The disciplinary and use of force reports provided by Defendants in support of their Motion describe a different chronology of the events leading up to the use of force. According to these reports, Doucet had been causing a disruption in the chow hall by verbally threatening staff. (Exhibit D at 0086; ECF 23 at 91). Baca-Salgado then ordered Doucet to sit down and finish eating. (*Id*.). Doucet refused the order, rose from his seat, and began walking towards Baca-Salgado in an aggressive manner with his fists clinched. (*Id*.). Baca-Salgado ordered Doucet to stop and submit to hand restraints, but Doucet refused. (*Id*.). Baca-Salgado then administered a single burst of chemical agent to stop Doucet. (Exhibit D at 0086; ECF 23 at 91). Doucet turned away, and Baca-Salgado attempted to apply hand restraints. (*Id.* at 0086, 0088; ECCF 23 at 91, 93). Doucet resisted the application of hand restraints, leading Baca-Salgado to push Doucet to the table and then down to the ground. (*Id*.) Gardner approached at this time and assisted Baca-Salgado in securing Doucet's left arm behind his back. (*Id*. at 0088; ECF 23 at 93).

Doucet received two charges for disciplinary violations: Code 3.3 "Assault on an Officer, no injury" and Code 24.0 "Refusing or Failing to Obey Orders." (Exhibit A at 0008-12; Exhibit B at 0037, 0039; ECF 23 at 12-4, 37-8). Specifically, Doucet's Code 3.3 disciplinary charge was based on his act of stepping toward Baca-Salgado in an aggressive manner with clinched fists. (Exhibit A at 0008-12; ECF 23 at 12-4). Doucet's Code 24.0 disciplinary charge was based his refusal to submit to the application of hand restraints. (*Id*.). On December 22, 2022, Doucet was found guilty of these charges at a disciplinary hearing based on both Baca-Salgado's testimony and Gardner's witness statement. (*Id*.). Doucet's sentence for these convictions included the loss

2

of 90 days of good-time credits. (*Id.*). Doucet's Code 3.3 disciplinary conviction subsequently was modified to a Code 4.0 conviction based on a review by the Central Grievance Office. (Exhibit A at 0003; Exhibit C at 0073; ECF 23 at 5, 73). An inmate commits a Code 4.0 disciplinary violation when he threatens to inflict harm, physical or otherwise, on an officer. (Exhibit B at 0038; ECF 23 at 41). Doucet's modified Code 4.0 conviction was based on the same underlying conduct as the original Code 3.3 conviction. (Exhibit C at 0073; ECF 23 at 77). Doucet's punishment for his disciplinary convictions after the modification remained the same. (*Id.*). Doucet's disciplinary case, his modified Code 4.0 conviction, and his loss of good-time credits have not been expunged or overturned on appeal. The TDCJ has denied Doucet's appeals and grievances seeking to overturn his disciplinary case and, instead, expressly upheld his punishment. (Exhibit C at 0047-50, 0072-73; ECF 23 at 50-4, 76-7).

Doucet filed this lawsuit on February 23, 2024, alleging that Baca-Salgado used excessive force, and both Baca-Salgado and Gardner violated his procedural due process rights by giving false witness statements and testimony at Doucet's disciplinary hearing. (ECF 3, 11). Defendants filed this Motion for Summary Judgment, claiming that Doucet's claims are barred by qualified immunity. Doucet did not respond to the Motion.

## II. SUMMARY JUDGMENT STANDARD

**A.     Summary Judgment is Proper if No Genuine Dispute as to Any Material Fact.**

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must resolve all reasonable doubts in favor of the party opposing the motion. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The movant has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Anderson,* 477 U.S. at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The nonmovant then must provide affirmative evidence to defeat summary judgment. *Anderson*, 477 U.S. at 257. No "mere denial of material facts nor...unsworn allegations [nor] arguments and assertions in briefs or legal memoranda" will suffice to carry this burden. *Moayedi v. Compaq Comput. Corp.*, 98 F. App'x 335, 338 (5th Cir. 2004). The Court requires "significant probative evidence" from the nonmovant in order to dismiss a request for summary judgment supported appropriately by the movant. *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). The Court must consider all evidence but must not make any credibility determinations or weigh the evidence. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

Because he proceeds *pro se*, Doucet's pleadings are held to a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed") (quotation omitted). Nevertheless, *pro se* parties must "still comply with the rules of procedure and make arguments capable of withstanding summary judgment." *Ogbodiegwu v. Wackenhut Corr. Corp.*, 202 F.3d 265, 1999 WL 1131884, at *2 (5th Cir. Nov. 10, 1999); *Yazdchi v. Am.*

*Honda Fin. Corp.*, 217 F. App'x 299, 304 (5th Cir. 2007) ("The right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law.") (citing *Hulsey v. Texas*, 929 F.2d 168, 171 (5th Cir. 1991)).

**B.    Doucet's Failure to Respond is Not Dispositive.**

When a nonmoving party does not file a response to a motion for summary judgment, the failure to respond "does not permit the court to enter a 'default' summary judgment." *Boyd v. Fam. Dollar Stores of Texas, LLC*, No. 3:22-cv-1368-D, 2023 WL 4141052, at *1 (N.D. Tex. June 22, 2023). As the United States Court of Appeals for the Fifth Circuit has explained:

> [a] motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule. *John v. La. (Bd. of Trustees) for State Colleges & Universities*, 757 F.2d 698, 709 (5th Cir. 1985). The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed. *Id*. at 708. Therefore, if the district judge's decision was to grant summary judgment solely because of a default, such decision constituted reversible error.

*Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985); *see also Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 & n.3 (5th Cir. 1995) (*citing Hibernia*). Moreover, FED. R. CIV. P. 56(e) provides that:

> [i]f a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion [and] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]

Therefore, Defendants still must provide sufficient evidence upon which the Court may base a summary judgment. Failure to do so requires the Court to deny the Motion, even if it is unopposed.

**C.    Defendants' Qualified Immunity Defense Alters the Burden of Proof.**

Defendants move for summary judgment on their affirmative defense of qualified immunity. "The doctrine of qualified immunity protects government officials from civil damages

liability when their actions could reasonably have been believed to be legal." *Argueta v. Jaradi*, 86 F.4th 1084, 1088 (5th Cir. 2023) (citing *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc)). Once an officer pleads qualified immunity, the plaintiff has the burden to establish that the officer violated the plaintiff's clearly established federal rights. *Argueta*, 86 F.4th at 1088 (citing *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005)). "This is a demanding standard." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1517 (2016). Because qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law, … we do not deny its protection unless existing precedent places the constitutional question beyond debate." *Argueta*, 86 F.4th at 1088 (internal citation omitted).

A qualified immunity defense alters the usual summary judgment burden of proof. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id*. To trigger the qualified-immunity framework, however, the government official must "satisfy his burden of establishing that the challenged conduct was within the scope of his discretionary authority." *Sweetin v. City of Texas City*, 48 F.4th 387, 392 (5th Cir. 2022) (quoting *Cherry Knoll, L.L. C. v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019)). For example, in *Sweetin,* the Fifth Circuit held this "oft-overlooked threshold requirement" was dispositive "because state law does not give a permit officer the authority to conduct stops of any kind." *Sweetin,* 48 F.4th at 392. In this case, however, Doucet does not dispute that Defendants were acting within the scope of their duties.

To determine if an official acting within the scope of his or her duties is entitled to qualified immunity, courts conduct a two-step analysis. First, they examine whether the plaintiff has shown

a violation of a constitutional right under current law. *Bevill v. Fletcher*, 26 F.4th 270, 275 (5th Cir. 2022) (quoting *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019)). Second, if a violation has occurred, courts determine whether the right in question was "clearly established" at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct. *Id.* In short, an officer is entitled to qualified immunity "if there is no violation, or if the conduct did not violate law clearly established at the time." *Bailey v. Iles*, No. 22-30509, 2023 WL 8062239 at *2 (5th Cir. Nov. 21, 2023). Courts have the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### III. LEGAL ANALYSIS

The first question before the Court is whether Doucet has established a genuine fact issue regarding whether one or both Defendants' allegedly wrongful conduct violated Doucet's constitutional rights. As shown herein, the Court concludes that he has not.

**A.     Doucet's Excessive Force Claim Against Baca-Salgado Is Barred.**

Under *Heck v. Humphrey*, 512 U.S. 477 (1994), a convicted criminal may not bring a claim under 42 U.S.C. § 1983 if success on that claim would necessarily imply the invalidity of a prior criminal conviction. Courts do not allow the use of Section 1983 to collaterally attack a prior criminal proceeding, "out of concern for finality and consistency." *Aucoin v. Cupil*, 958 F.3d 379, 380-81 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 567 (2020). As a result, an inmate cannot bring a Section 1983 claim for excessive force by a guard if the inmate already has been found guilty for the conduct that justified the use of force. In short, *Heck* prohibits suit under Section 1983 if success on the claim would necessarily imply that a prior conviction or sentence is invalid. *Heck*, 512 U.S. at 486-87. *Heck* also applies to disciplinary proceedings that affect the duration of a

prisoner's sentence. *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998) ("A 'conviction,' for purposes of *Heck*, includes a ruling in a prison disciplinary proceeding that results in a change to the prisoner's sentence, including the loss of good-time credits.") (citing *Edwards v. Balisok*, 520 U.S. 641, 645 (1997)). "The inquiry is 'fact intensive' and dependent on the precise nature of the disciplinary offense." *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008).

The fact that Doucet does not challenge the loss of his good-time credits is not relevant to this analysis. *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) ("It is irrelevant that [a plaintiff] disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit."). A claim is barred by *Heck* if the plaintiff's factual allegations supporting the claim are necessarily inconsistent with the validity of the conviction. *See*, *e.g.*, *Bush*, 513 F.3d at 497; *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 656-57 (5th Cir. 2007). A claim and a conviction may co-exist, however, if they are "temporally and conceptually distinct." *Poole v. City of Shreveport*, 13 F.4th 420, 426-27 (5th Cir. 2021). Therefore, the Court must conduct the "fact-intensive" analysis to determine whether Doucet's excessive force claim is inconsistent with his disciplinary conviction.

Although *Heck* bars claims that directly contradict Doucet's disciplinary conviction, any claim of excessive force occurring "*after* the inmate has submitted and ceased engaging in the alleged misconduct" is not *Heck*-barred. *Clark v. Wallace*, No. 23-6293, 2024 WL 1013902 (E.D. La. Mar. 8, 2024), citing *Aucoin*, 958 F.3d at 382 (emphasis in original). Therefore, the Court must evaluate the factual circumstances occurring both before and after Doucet was restrained.

      1.      **Doucet's Pre-Restraint Allegations.**

Doucet's Complaint alleges that he "was attacked from behind and assaulted" by Baca-Salgado while Doucet was "seated at a table in the chow hall." (ECF 3 at 4). He alleges that Baca-

Salgado, suddenly and without warning, assaulted him while he was seated with his back turned to Baca-Salgado. (ECF 11 at 1). He expressly denies that he approached Baca-Salgado in an aggressive manner with clinched fists. He further denies that he refused an order from Baca-Salgado to submit to hand restraints. (*Id*. at 4, 9). These allegations directly contradict the facts upon which Doucet's disciplinary conviction is based. Specifically, Baca-Salgado testified that Doucet attempted to assault him by stepping towards him in an aggressive manner with clenched fists, and that he failed to obey orders. (ECF 23 at 9).

The factual account in Doucet's Complaint is directly contradictory to the facts supporting his disciplinary conviction. When a plaintiff's Section 1983 claim "is based solely on his assertions that he ... did nothing wrong, and was attacked by the [] officers for no reason," that suit "squarely challenges the factual determination that underlies his conviction" and is necessarily at odds with the conviction. *Aucoin*, 958 F.3d at 383, quoting *Walker v. Munsell*, 281 F. App'x 388, 390 (5th Cir. 2008) (per curiam). That is true regardless of a civil claim's "theoretical compatibility" with the conviction. *Daigre v. City of Waveland*, 549 F. App'x 283, 286 (5th Cir. 2013) (quoting *Bush*, 513 F.3d at 498 n.14); *see also Thomas v. Pohlmann*, 681 F. App'x 401, 407 (5th Cir. 2017) (citing with approval *Daigre* and *DeLeon*).

The undisputed evidence shows that Doucet's disciplinary conviction and his Section 1983 claims are not "temporally and conceptually distinct" such that they may co-exist because they directly contradict each other. *See Poole*, 13 F.4th at 426-27. As a result, *Heck* bars Doucet's claims unless he shows that the disciplinary conviction has been invalidated. *Heck*, 512 U.S. at 487. Absent such a showing, a *Heck*-barred claim must be "dismissed with prejudice to [its] being asserted again until the *Heck* conditions are met." *DeLeon*, 488 F.3d at 657 (quoting *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996)). The evidence shows that Doucet's disciplinary

9

conviction has not been invalidated; in fact, it has been upheld. (ECF 23 at 54). Therefore, Doucet's pre-restraint excessive force claim is barred by *Heck*, and the claim should be dismissed with prejudice until the *Heck* conditions are met.

### 2. Doucet's Post-Restraint Allegations.

The Court next evaluates Doucet's factual allegations of Defendants' post-restraint conduct to determine if there is evidence of a material factual dispute as to whether Baca-Salgado used excessive force after Doucet was restrained. It is clearly established that prison staff cannot cause the unnecessary and wanton infliction of pain. *Whitley v. Albers*, 475 U.S. 312, 320 (1986). The "core judicial inquiry" into a plaintiff's claim of excessive force under the Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Martin v. Seal*, 510 F. App'x 309, 312 (5th Cir. 2013) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). Minimal uses of force that do not rise to a level "repugnant to the conscience of mankind" do not state a constitutional violation. *Id*. at 10 (citing *Whitley*, 475 U.S. at 327). The inquiry has two components: 1) an objective component that focuses on whether the alleged wrongdoing was nontrivial and harmful enough to violate the constitution; and 2) a subjective component that focuses on the mental state of the alleged wrongdoer. *Hudson*, 503 U.S. at 7-8.

The sole allegations of force used by Baca-Salgado after restraints were applied to Doucet were that Baca-Salgado continued to apply "pressure to [his] back area for a short period of time." (ECF 11 at 5). He further alleges that Baca-Salgado told him to "shut the f*** up or I'm going to spray [your] a** again." *Id.* The brief pressure applied to Doucet's back for an admittedly "short time" does not rise to the level of a constitutional violation. Further, the Fifth Circuit has long recognized that verbal threats or harassment made by an officer do not constitute a basis for a

Section 1983 claim. *See, e.g., Robertson v. Plano City*, 70 F.3d 21, 24 (5th Cir. 1995) (citing *McFadden v. Lucas*, 713 F.2d 143 (5th Cir. 1983)); *see also Rader v. Lubbock Cty.*, No. Civ. A. 5:01-CV-258-C, 2003 WL 21145788, at *13 (N.D. Tex. Apr. 25, 2003) (quoting *Robertson*, 70 F.3d at 24) (dismissing prisoner's claim that defendant verbally taunted and threatened him because "mere threatening language and gestures of a custodial office[r] do not, even if true, amount to constitutional violations").

Accordingly, Baca-Salgado's Motion should be granted on Doucet's post-restraint claims of excessive force because Doucet has not stated a constitutional law violation and, as a result, Baca-Salgado is entitled to qualified immunity.

**B.    Doucet's Fourteenth Amendment Claims Are Barred.**

Similarly, Doucet's claims that Defendants lied during his disciplinary hearing in violation of his Fourteenth Amendment right of due process also are barred by *Heck*. A judgment that Baca-Salgado and Gardner provided false testimony would "necessarily imply" the invalidity of Doucet's disciplinary conviction and affect the length of his confinement. *Edwards*, 520 U.S. at 644, 646. Doucet asks this Court to find that the procedures used in the disciplinary proceeding against him violated his due process rights. The relief Doucet seeks would necessarily imply the invalidity of the conviction in the disciplinary proceeding and would change the length of his confinement. *See Branum v. Clayborne*, No. H-05-0229, 2007 WL 9758433 (S.D. Tex. Apr. 9, 2007) (*Heck* bars claim that officers provided false testimony during disciplinary hearing). As a result, Doucet's Fourteenth Amendment claims are barred by *Heck* and should be dismissed with prejudice until the *Heck* requirements are met.

**C.    Eighth Amendment Claim Against Gardner.**

Doucet's Eighth Amendment claim against Gardner also fails. Personal involvement is an

11

essential element of any civil rights action brought under 42 U.S.C. § 1983. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). To hold a defendant liable under Section 1983, a plaintiff must show that the defendant was personally involved in the alleged constitutional violation. *Id.* As a general rule, an individual cannot be held liable for the wrongful acts of another. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Rather, "each Government official… is only liable for his or her own misconduct." *Id.* An individual's mere knowledge of or acquiescence to another person's misconduct is insufficient to establish personal involvement. *Id.*

Doucet alleges that Gardner violated his Eighth Amendment rights "by watching as his co-worker… assaulted" him and then writing a false witness statement that was used Doucet's disciplinary hearing. (ECF 11 at 20). Doucet does not allege, however, that Gardner personally participated in the use of force incident or used excessive force against him. Further, the undisputed evidence shows that Doucet has no valid claim for bystander liability against Gardner. "Bystander" liability only occurs if the bystander defendant had reasonable opportunity to intercede and prevent the constitutional violation." *Rogers v. Buchanan*, No. 3:12-CV-2458-M-BN, 2015 WL 3439145, at *5-6 (N.D. Tex. Mar. 27, 2015), *R. & R. adopted as modified*, No. 3:12-CV-2458-M-BN, 2015 WL 3504518 (N.D. Tex. May 28, 2015) (citing *Spencer v. Rau*, 542 F.Supp.2d 583, 594 (W.D. Tex. 2007) (holding that an officer can be held liable under Section 1983 for failure to intervene "if the defendant was present when the force was used, observed the use of excessive force, was in a position where he could realistically prevent the force, and had sufficient time to prevent it")).

The "reasonable opportunity to intercede and prevent the constitutional violation" is "[t]he focus of the bystander-liability inquiry." *Rogers*, 2015 WL 3439145 at *5 (citing *Malone v. City of Fort Worth, Tex.*, No. 4:09-cv-634-Y, 2014 WL 5781001, at *16 (N.D. Tex. Nov. 6, 2014); *Terrell v. Castleberry*, Civ. A. No. H-06-2025, 2008 WL 687519, at *5 (S.D. Tex. Mar. 12, 2008)

("A prison guard has a duty to intervene and attempt to end an assault on an inmate. The rationale underlying the bystander liability theory is that a bystanding officer, by choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer.")). Thus, "an officer may be liable under § 1983 under a theory of bystander liability where the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" *Rogers*, 2015 WL 3439145 at *6 (citing *Malone*, 2014 WL 5781001, at *16 (quoting *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013))).

In this case, Doucet's bystander liability claim against Gardner rests on a determination that Baca-Salgado acted unreasonably and used excessive force against Doucet, which would have required intervention by Gardner. For the reasons outlined above, the Court cannot entertain Doucet's bystander liability claim until the *Heck* conditions are satisfied. The bystander liability claim against Gardner should be dismissed with prejudice until the *Heck* conditions are met.

**D.    Doucet Does Not Overcome the Second Prong of the Qualified Immunity Analysis.**

Even assuming that Defendants' conduct resulted in a violation of Doucet's constitutional rights, their conduct was objectively reasonable in light of clearly established law. "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation omitted). There are two ways for a plaintiff to demonstrate that a defendant's conduct violated clearly established law. *Batyukova v. Doege,* 994 F.3d 717, 726 (5th Cir. 2021). Under the first, more typical approach, the plaintiff must "identify a case" or "body of relevant case law" in which "an officer acting under similar circumstances ... was held to have violated the [Constitution]." *Id*. While there need not be a case directly on point, the unlawfulness of the challenged conduct must be beyond debate. *Id.* Under the second approach, there can be the rare

13

"obvious case," where the unlawfulness of the officer's conduct is so egregious that it is sufficiently clear although existing precedent does not address similar factual circumstances. *See Batyukova*, 994 F.3d at 726 (citing *Dist. of Columbia v. Wesby*, 538 U.S. 48, 65 (2018)); *see also Brosseau v. Haugen*, 543 U.S. 194, 199 (2004).

"In determining what constitutes clearly established law, [the Fifth Circuit] looks to Supreme Court precedent and then to [its] own." *Hicks v. LeBlanc*, 81 F.4th 497, 503 (5th Cir. 2023), (quoting *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018)). When there is no direct controlling authority, "[the Fifth Circuit] may rely on decisions from other circuits to the extent that they constitute a robust consensus of cases of persuasive authority." *Id.* "It is the plaintiff's burden to find a case in his favor that does not define the law at a high level of generality." *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019).

This is not the rare "obvious case" in which the unlawfulness of the officer's conduct is so egregious that it is sufficiently clear such actions violate a prisoner's rights. Further, Doucet provided no case law in response to the Motion that supports his position. Thus, he failed to meet his burden to show that Defendants should have known that their conduct violated clearly established law.

E. **Defendants are Entitled to Qualified Immunity.**

For the reasons stated above, Doucet failed to provide sufficient evidence to create a fact issue as to Defendants' entitlement to qualified immunity. Specifically, Doucet failed to create a material fact issue as to whether Defendants' conduct violated his constitutional rights. Further, Doucet failed to create a material fact issue as to whether Defendants' conduct violated Doucet's clearly established rights. Defendants' motion for summary judgment on qualified immunity should be granted.

## RECOMMENDATION

For the reasons set forth above, the U.S. Magistrate Judge recommends that Defendants' Motion For Summary Judgment be GRANTED. Specifically, Doucet's *Heck*-barred claims should be dismissed with prejudice until the conditions of *Heck* are met. Doucet's post-restraint claim of excessive force against Baca-Salgado should be dismissed with prejudice.

## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED March 27, 2025.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district

court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).